IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22-03124-01-CR-S-BP |
| | ) | |
| KELVIN A. MCGEE, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT & RECOMMENDATIONS**

Before the Court is Defendant's Motion to Suppress Evidence on the Basis of an Unlawful Search of Defendant Pursuant to the Fourth Amendment and Fourteenth Amendment to the United States Constitution. (Doc. 28.) This action has been referred to the undersigned for the purpose of submitting a report on any pretrial motions to suppress evidence. As follows, it is **RECOMMENDED** that the Motion be **DENIED**.

I.  Background

Defendant has been charged by indictment with possession with intent to distribute 40 grams or more of fentanyl in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B) and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 12.)

In his Motion, Defendant asks the Court "to suppress any evidence obtained from the illegal detainment and subsequent search of the Defendant on or about July 27th, 2022, and for all fruit of the poisonness [sic] tree thereof." (Doc. 28 at 1.) In support, Defendant claims that "the search warrant was issued without the requisite probable cause." *Id.*

The Government filed Suggestions in Opposition to the Motion. (Doc. 31.) A suppression hearing was held on May 17, 2023. (Doc. 39.) Defendant appeared in person with his attorney,

1

Stuart Huffman, and the Government was represented by Assistant United States Attorney Anthony Brown. (Doc. 41.) Springfield Police Department Officer Steven Hartman appeared and testified. *Id*.

II. **Findings of Fact**[1]

On July 27, 2022, Officer Hartman applied for a search warrant for Defendant's residence at 723 North Weaver Avenue, Springfield, Greene County, Missouri. The application listed the following property, articles, materials, or substances to be searched for: controlled substances including heroin/fentanyl, records of drug distribution, tools or instruments for drug distribution, money or other items of value, documents indicating occupancy of the premises, weapons, digital recording media, and surveillance equipment. (Doc. 40, Exh. 1, Affidavit at 1.) Officer Hartman provided an Affidavit in support, wherein he stated:

> Within the past 40 days, I received information from a confidential source who stated Kelvin McGee is involved in selling heroin/fentanyl in Springfield, Greene County, Missouri. The source was afraid of Kelvin McGee due to his violent past. The sources' identity should remain anonymous for his/her safety.
> I determined McGee had utilities at 723 North Weaver Avenue Springfield, Greene County, Missouri. I also determined that McGee frequented 929 North Prospect Avenue. On 06/30/2022, I conducted surveillance on 929 North Prospect and observed Kelvin McGee exit the residence and walk to a black Chrysler 300 bearing California license plate 8TYZ745, which was parked on the street, and leave the residence. I followed McGee to 723 North Weaver where I watched him enter the residence.
> Within the past 30 days, I had contact with a different reliable confidential informant (CI) who advised Kelvin McGee was selling heroin/fentanyl. The CI stated he/she could purchase heroin/fentanyl from McGee. The CI stated Kelvin McGee drives a black Chrysler 300 which he sells heroin/fentanyl from. The CI's identity should remain anonymous for his/her safety and due to on-going criminal investigations. The CI is familiar with heroin/fentanyl from past drug use and his/her involvement in the drug culture.
> Within the past 30 days, the CI arranged to meet Kelvin McGee on a business parking lot to purchase heroin/fentanyl. I met the CI at a predetermined location and insured he/she wasn't in possession of any contraband. I provided him/her with funds from a police department account to purchase heroin/fentanyl.

---

[1] The facts set forth herein are taken from the testimony adduced at the hearing on the instant Motion and the exhibits admitted during the hearing. (Docs. 40, 41.)

I watched the CI and a short time later I observed a black Chrysler 300 bearing California license 8TYZ745 enter the parking lot. I observed the CI enter the front passenger's seat for a short time before exiting. I observed the driver of the Chrysler 300 was Kelvin McGee. The Chrysler 300 left the area, and I contacted the CI. He/She provided me with a small clear bag containing a white powdery substance consistent with heroin/fentanyl. I insured the CI wasn't in possession of any contraband. The CI did not have contact with any other persons. I later logged the heroin/fentanyl into property. I did not test the substance due to the safety concerns associated with fentanyl.

Surveillance officers followed the Chrysler 300 to another business parking lot where Kelvin McGee parked the vehicle behind the business for a short time before leaving. Officers were unable to see McGee's actions behind the business due to the location he parked, and the view of the vehicle being obstructed by the building. McGee then traveled to Kum & Go at 1211 West Sunshine where he parked the vehicle. I observed an unidentified male enter the front passenger's seat of the Chrysler 300 for approximately two minutes before exiting. McGee then left the location. Based on my training and experience, I believed McGee had completed a drug transaction.

A check of the license plate California 8TYZ745 determined the vehicle is registered to EAN Holdings LLC and is a rental vehicle.

On 07/06/2022, I applied for and was granted a search warrant to place a GPS tracking device on the Chrysler 300 bearing California license 8TYZ745. On 07/07/2022, I placed the tracking device on the vehicle. Later, on 07/7/2022 at approximately 1615 hours. Kelvin McGee drove the vehicle to Enterprise Leasing where he returned the vehicle and leased a white Chevrolet Malibu bearing Tennessee license 2Wl9A7. I observed McGee drive away in the Malibu and I contacted employees at Enterprise. I was told McGee had leased the Malibu for a week. I removed the tracking device from the Chrysler 300.

On 7/12/2022, I applied for and was granted a search warrant to place a tracking device on the Ma1ibu. On 07/13/2022, I placed the device on the vehicle.

On numerous occasions, I observed the tracking device showing the vehicle was stopped in the 700 block of North Weaver Avenue. When I drove by 723 North Weaver Avenue, I observed the vehicle parked in the driveway next to the residence. I have observed McGee freely entering and exiting 723 North Weaver on many occasions.

On 07/14/2022, I was notified the tracking device had left 723 North Weaver. I monitored the tracking device and followed the vehicle to Kum & Go at 1211 West Sunshine Street. I observed the Malibu parked on the west side of the building and I observed a male was seated in the passenger's seat. I noticed a gold Ford Taurus parked next to the Malibu. A few moments later, I observed a male exit the Malibu and enter the Taurus. I recognized the male was [R.W.]. I followed [R.W.] in the Taurus to [an address] in Republic. I knew this residence to be the home of [D.B.]. I am familiar with [D.B.] and [R.W.] from past drug investigations. Based on my training and experience observing parking lot drug deals, I believed a drug deal had occurred.

3

On 07/15/2022, the tracking device was showing stopped in the 700 block of North Weaver Avenue. I drove past the residence and observed the Malibu parked in the driveway of 723 North Weaver. At approximately 2045 hours, I received a notification the tracking device was moving and had left 723 N Weaver. I began monitoring the tracking device and observed the device travel from 723 N Weaver northbound before turning westbound on Calhoun to the area of Wabash Avenue. The vehicle appeared to turn around and traveled back eastbound on Calhoun to Broadway where it turned southbound. The vehicle continued southbound on Broadway to Chestnut Expressway, before traveling westbound on Chestnut Expressway. Based on the tracking device information, at no point did the vehicle stop longer than 30 seconds and each stop appeared to be at a stop sign. I got behind the vehicle near 1200 West Chestnut Expressway and followed behind it to the parking lot of 3535 West Mount Vernon Street (Walmart Neighborhood Market). I observed the vehicle circle the parking lot and park on the north side of the parking lot. Detective Rauch parked our unmarked enforcement vehicle approximately 30 yards from the Malibu. Approximately one minute later, a white Acura SUV bearing Missouri license GH0T7F entered the parking lot and parked next to the Malibu. The driver of the Acura, identified as [G.S.], exited the Acura and entered the front passenger's seat of the Malibu.

[G.S.] was the registered owner of the Acura and I checked him through department resources and found he had been involved in past drug incidents. A short time later, [G.S.] exited the Malibu and entered the Acura. The Malibu left the location, and I observed the driver was Kelvin McGee. The Acura then left, and I followed behind it as it went southbound on West Bypass. Based on my knowledge of Kelvin McGee selling controlled substances, and my past training and experience observing parking lot drug deals, I believed a drug deal had occurred.

I initiated a traffic stop on the vehicle and contacted [G.S.]. The passenger in the vehicle was later identified as [M.T.]. [G.S.] stated he had met the driver of the Malibu because he owed him money. [M.T.] claimed they were giving the driver of the Malibu antibiotics. [M.T.] also provided a false name and was found to have an active warrant for her arrest. During the traffic stop, Detective Rauch observed a clear plastic bag containing a crystalline substance consistent with methamphetamine on the center cupholder. I searched the vehicle based on the plain-view contraband, and located a gray pouch on the passenger's floorboard. Inside the pouch I located an open clear plastic bag containing approximately .5 grams of a white powdery substance consistent with heroin/fentanyl. I also located empty bags, spoons, and syringes in the pouch.

On 07/20/2022 while conducting surveillance on the Malibu by monitoring the tracking device, I began (sic) followed the Malibu to the parking lot of 1525 S Glenstone (Casey's). I observed the vehicle park on the north end of the parking lot. A short time later, I observed another vehicle park next to the Malibu. I observed a female exit the other vehicle and enter the front passenger seat of the Malibu for approximately one minute before exiting. The female left in the other vehicle, and I observed McGee was the driver of the Malibu. McGee left in the Malibu. I was unable to initiate contact with the female.

On 07/21/2022, McGee returned the Malibu to Enterprise leasing and the tracking device was removed.

On 07/27/2022, I was conducting surveillance on 723 North Weaver Avenue. I observed a silver Dodge Charger parked in the driveway. I later observed Kelvin McGee exit the front door of 723 North Weaver Avenue and enter the driver's seat of the Charger. A male entered the front passenger's seat. I followed the Charger to the area of Mount Vernon and Kansas Expressway where McGee entered a business parking lot. A short time later, the Charger left the parking lot without the passenger. I continued following the Charger to 1655 South Kansas Expressway where it entered the parking lot and parked at a gas pump. I observed McGee exit the driver's seat and enter the store for a short time before exiting. A few moments later, I observed a female approach the passenger's side of the vehicle and enter the front passenger's seat. McGee, who had been standing outside the Charger pumping gas, entered the driver's seat. The female then exited the Charger and walked to a blue Hyundai and left the lot. McGee entered the Charger and began to leave. Based on my past training and experience, and my experience observing McGee conduct drug deals, I believed a drug deal had occurred. I followed behind the Hyundai and initiated a traffic stop near Golden Avenue and Sunshine Street Springfield, Greene County, Missouri. I contacted the driver and told her to exit the vehicle. When asked if she had anything illegal on her, she admitted she had drugs in her pants and agreed to remove the drugs. She admitted the substance was three grams of heroin/fentanyl. She removed a bag containing a white powdery substance that appeared to be approximately three grams of heroin/fentanyl from her pants. Based on my past training and experience, I believe the substance to be heroin/fentanyl. I did not test the substance due to the officer safety concerns related to fentanyl.

Based on past information from the CI, traffic stops where McGee had left 723 North Weaver Avenue and drugs were located, and past surveillance, I believe McGee stores heroin/fentanyl at 723 North Weaver Avenue Springfield, Greene County, Missouri.

I reviewed the criminal history of Kelvin McGee. McGee is a registered sex offender and has a caution of Armed and Dangerous. McGee has past arrests for Forcible Rape/Attempt Forcible rape with a weapon, Robbery 1st Degree, Armed Criminal Action, Burglary 1st Degree, Delivery of Controlled Substance, and Resisting Arrest.

Due to the ease of destruction of evidentiary items of drug use and distribution, the lengthy violent criminal history of Kelvin McGee, I am requesting a NO KNOCK entry for the search warrant service.

l know based upon my training and work experience that individuals participating in trafficking or distributing controlled substances:

-keep records, ledgers, or documents, or records of the same, representing the proceeds from the commission of such criminal offenses, including, but not limited to computers, computer disks, tapes, and other storage devices or electronic media, and the records contained therein or generated thereby, documenting and recording the trafficking in or distribution of controlled substances or drugs of abuse;

    -keep records, documents, pay stubs, or tax records showing employment or lack of employment of suspected individuals;
    -keep tools, instruments, equipment and paraphernalia used to manufacture, store, process, administer, use, or sell controlled substances or drugs of abuse;
    -maintain or keep on hand monies that are proceeds of drug transactions, including, but not limited to, bank records or statements of and/or savings accounts, and certificates of deposit, precious metals, jewelry, U.S. currency and safes;
    -keep documents, mail, utility records, identification records or cards, and items of clothing indicating ownership/residency of the premises to be searched;
    -keep deadly weapons, dangerous instruments and firearms to protect or defend controlled substances or drugs of abuse and the proceeds from the sales thereof;
    -keep photographs, slides, video tapes, film strips, and digital recording media such as DVD's, depicting conspirators, other assets, proceeds, deadly weapons and controlled substances;
    -keep and maintain surveillance equipment that could be used to warn occupants of approaching law enforcement officers, including but not limited to cameras or recording devices.
    I know that person(s) present at the execution of this warrant are likely to be persons involved in the illegal drug culture. Accordingly. I know that such persons are likely to hold their drug of choice on their persons or in their personal vehicles or vehicles under their control. l also know that person(s) involved in the illegal drug culture hide drugs in safes, outbuildings and in their vehicles while the vehicles are parked at their own residence. Further, I know such persons present are likely to have cellular phones and that cellular telephone data, such as but not limited to text messages, call records, contact lists and pictures, have held evidence of illegal drug transactions and associations in illegal drug distribution networks. I base these assessments on my background, training, work experience, and on previous drug investigations where I found, this to be true.

*Id*. at 2–6. On July 27, 2022, a Judge of the Circuit Court of Greene County, Missouri verified the application and affidavit and issued the search warrant. (Doc. 40, Exh. 1, Affidavit at 7; Search Warrant at 1–3.)

Officer Hartman also testified as to additional information that was not included in the affidavit. The second Confidential Source (CS) had provided information to another officer in the past that proved reliable, and that other officer informed Officer Hartman of that fact. (Doc. 41 at 16–17, 47–48.) Also, Officer Hartman had previously worked with the second CS conducting a controlled buy. *Id*. at 48.

### III. Conclusions of Law

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. amend. IV; *United States v. Allen*, 43 F.4th 901, 907 (8th Cir. 2022). Generally, evidence found because of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Miller*, 11 F.4th 944, 954 (8th Cir. 2021). Defendant moves to suppress evidence seized following the execution of the search warrant, arguing that the warrant lacked probable cause. (Docs 28.) The Government responds that the warrant was supported by probable cause, and alternatively, that the *Leon* good-faith exception would preclude suppression of the evidence. (Doc. 31.) The Court addresses the parties' arguments below.

#### a. The Warrant was Supported by Probable Cause

Probable cause exists when "there is a fair probability evidence of a crime will be found in a particular place." *United States v. Knutson*, 967 F.3d 754, 758 (8th Cir. 2020); *see also United States v. Humphrey*, 140 F.3d 762, 764 (8th Cir. 1998) ("The source and credibility of evidence in support of a warrant request is considered in the totality of the circumstances analysis, and a warrant is proper so long as the evidence as a whole creates a reasonable probability that the search will lead to the discovery of evidence."). A court determines whether probable cause exists by looking at the totality of the circumstances, and "[j]udges may draw reasonable inferences . . . in determining whether probable cause exists to issue a warrant." *United States. v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008). "[T]he duty of a reviewing court is simply to ensure that the [issuing judge] had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 214 (1983).

"When the issuing judge relied solely upon a supporting affidavit to issue the search warrant," as in this case, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020) (cleaned up). Furthermore, when probable cause is based on information supplied by an informant, the core question is whether the information is reliable. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). Courts examine affidavits "with a common sense approach and not in a hypertechnical fashion." *United States v. O'Dell*, 766 F.3d 870, 873–74 (8th Cir. 2014). A reviewing court should pay "great deference" to an issuing judge's probable cause determination. *Gates*, 462 U.S. at 236, 238–39.

Defendant argues that the affidavit did not provide sufficient information to determine the confidential sources' reliability and basis of knowledge to support a finding of probable cause. (Doc. 28 at 5–6). "An informant's reliability, veracity, and basis of knowledge are relevant considerations—but not independent, essential elements—in finding probable cause." *Knutson*, 967 F.3d at 758 (cleaned up). A totality-of-the-circumstances analysis prohibits an "excessively technical dissection of informants' tips" that views "bits and pieces of information in isolation." *United States v. Buchanan*, 574 F.3d 554, 562 (8th Cir. 2009) (cleaned up); *see also Gates*, 462 U.S. at 234–35.

Officers may rely on an informant's tip to support a probable cause determination "if the informant has provided reliable information in the past *or* if his tip is independently corroborated." *United States v. Rowe*, 878 F.3d 623, 628 (8th Cir. 2017) (emphasis added). It is well established that "[t]he lack of specific details regarding basis of knowledge is not fatal in the probable cause analysis." *Knutson*, 967 F.3d at 758 (cleaned up). Additionally, the Supreme Court has concluded that "[i]f, for example, a particular informant is known for the unusual reliability of his predictions

of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip." *Gates*, 462 U.S. at 233. "Where a previously unknown informant provides information, the informant's lack of a track record requires some independent verification to establish the reliability of the information." *United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995) (cleaned up).

The undersigned finds that the affidavit provided sufficient corroborative information to permit the issuing judge to find the confidential sources were reliable in support of probable cause. The first CS stated that Defendant was involved in selling heroin/fentanyl in Springfield, which was later corroborated by a second CS that also provided that Defendant was selling heroin/fentanyl. Additionally, the second CS stated that they could purchase heroin/fentanyl from Defendant and that Defendant drove a black Chrysler 300 from which he sells the heroin/fentanyl. The second CS's information was corroborated during a controlled buy in which Officer Hartman identified Defendant as the driver of the Chrysler 300 and observed the CS enter the Chrysler in a business parking lot and exit after a short time. The CS then provided Officer Hartman, who had ensured the CS was not in possession of contraband beforehand, a small clear bag containing what Officer Hartman believed to be heroin/fentanyl, based on his training and experience.

Furthermore, officers observed Defendant conduct what they believed to be drug deals on other occasions, further corroborating the CSs' information that Defendant was selling heroin/fentanyl. After the controlled buy, surveillance officers eventually followed the Chrysler to a Kum & Go where Officer Hartman observed what he believed, based on his training and experience, was Defendant conducting another drug transaction. On July 14, 2022, the tracking device showed Defendant's vehicle leave 723 North Weaver and then proceed to a Kum & Go

9

Case 6:22-cr-03124-BP    Document 42    Filed 09/21/23    Page 9 of 17

where Officer Hartman observed again what he believed to be a drug transaction, based on his training and experience as well as the fact that he recognized the other party in the transaction from past drug investigations.

On July 15, 2022, after the tracking device showed Defendant's vehicle leave 723 North Weaver, Officer Hartman got behind the vehicle which he followed to a business parking lot, observed Defendant as the driver of the vehicle, and observed what he believed to be a drug transaction with a driver of an Acura, based on his training and experience. Officer Hartman identified the driver of the Acura as G.S. and checked him through department resources finding that he had been involved in past drug incidents. After stopping the Acura, Officer Rauch, working with Officer Hartman, observed a plastic bag therein containing a crystalline substance consistent with methamphetamine. Officer Hartman then searched the Acura, based on the plain-view doctrine, finding a pouch containing an open clear bag containing approximately .5 grams of a white powdery substance consistent with heroin/fentanyl, as well as empty bags, spoons, and syringes in the pouch.

Additionally, on July 20, 2022, Officer Hartman followed Defendant's vehicle to the parking lot of a Casey's. Officer Hartman observed Defendant was the driver of the vehicle and saw what he believed to be a drug transaction, based on his training and experience, with a woman who parked her vehicle next to Defendant's vehicle and entered Defendant's vehicle for a short time. Lastly, on July 27, 2022, Officer Hartman observed Defendant exit 723 North Avenue and enter the driver's seat of a Dodge Charger and followed it to a gas station. Officer Hartman then observed what he believed to be a drug transaction, based on his training and experience, between Defendant and a woman, driving a Hyundai, who entered the front passenger's seat. After the Hyundai left the gas station, Officer Hartman conducted a traffic stop on the Hyundai. The woman

admitted to having three grams of heroin/fentanyl in her pants, at which time she removed a bag containing a white powdery substance that was consistent with heroin/fentanyl.

Importantly, the Eighth Circuit has concluded that "some independent verification to establish the reliability of the [informant's] information" is sufficient to establish probable cause, including "the corroboration of minor, innocent details." *Knutson*, 967 F.3d at 759 (cleaned up). The Eighth Circuit has upheld probable cause on the corroboration of an anonymous source's information on less than the corroborated information in the present case. In *Murphy*, an anonymous informant told law enforcement that the defendant was recently released from the Missouri Department of Corrections for murder, provided the address of the defendant, stated that he had a firearm, and that he was threatening to kill a Jew. *United States v. Murphy*, 69 F.3d 237, 239–41 (8th Cir. 1995). The Eighth Circuit upheld probable cause based on corroboration that the defendant was recently released from incarceration and that he lived at the stated address.[2] *Id.*

Additionally, a nexus existed between the contraband and the place to be searched prior to the issuance of the warrant. The Eighth Circuit has held:

> [C]ases, in which defendants stop at their own property during or immediately before or after a drug transaction, support comparable experience-based inferences. When a defendant "drive[s] directly from" his or her house to a drug sale, *United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019), leaves his "home immediately prior to selling drugs," *United States v. Barnes*, 492 F.3d 33, 37 (1st Cir. 2007), "start[s] from her residence shortly before allegedly delivering drugs," *United States v. Bulgatz*, 693 F.2d 728, 731 (8th Cir. 1982), or sleeps at home "the evening after . . . collect[ing] proceeds from a drug sale," *United States v. Stearn*, 597 F.3d 540, 564 (3d Cir. 2010), a judge may have good reason to think evidence of drug sales might be found in the defendant's house.

---

[2] The Eighth Circuit expressed that it was "shocked" and "bothered" by the "bare bones" nature of the affidavit, but nonetheless found the affidavit was sufficient to establish probable cause. *Murphy*, 69 F.3d at 247 n.2 ("We echo the district court's concerns regarding the bare bones nature of the affidavit. While we hold that under the particular facts of this case the affidavit was sufficient to establish probable cause, a more careful drafting of the initial affidavit by the prosecuting attorney would have simplified the issues in this case.").

*United States v. White*, 990 F.3d 488, 492 (6th Cir. 2021). Officer Hartman determined Defendant had utilities in his name at 723 North Weaver Avenue Springfield, Greene County, Missouri. Officer Hartman also observed Defendant enter and exit the residence of 723 North Weaver on multiple occasions and had seen his car parked next to the residence. Additionally, on July 14, 15, and 27, 2022, Defendant left 723 North Weaver and traveled to business parking lots, where officers observed what they believed to be drug transactions on each date, based on their training and experience. *See United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (concluding that the discovery of drugs on a defendant shortly after leaving the target residence "certainly contributes to a finding of probable cause"). As such, the undersigned finds that a nexus existed between Defendant's residence and the drug deal the officers witnessed.

Therefore, based on the foregoing, the undersigned finds that the Search Warrant was supported by sufficient probable cause, and concludes that the Motion should be denied as to this basis. As such, the undersigned also finds that Defendant's "fruit of the poisonous tree" argument is not implicated.

b. **The *Leon* Good Faith Exception Applies**

The Government argues, and the undersigned agrees, that even assuming probable cause was lacking based on Officer Hartman's affidavit, the *Leon* good-faith exception would apply to preclude suppression of the evidence. *See United States v. Leon*, 468 U.S. 897, 921–23 (1984). "Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Norey*, 31 F.4th 631, 635 (8th Cir. 2022) (cleaned up). Evidence seized as a result of good-faith reliance will thus be admitted unless:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017) (cleaned up); *see also Leon*, 468 U.S. at 923.

"The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *Norey*, 31 F.4th at 635 (cleaned up). "To determine whether an officer had an objectively reasonable belief in the existence of probable cause, this Court assesses the totality of the circumstances, including information known to the officer but not presented to the issuing judge." *Id.*

Here, the undersigned concludes that none of the four exceptions to good-faith reliance are applicable, and that Officer Hartman acted in good faith. Defendant does not argue, nor does the undersigned find, that Officer Hartman knowingly and intentionally misled the issuing judge with a false statement. Although additional information was known to Officer Hartman and not included in the affidavit, the affidavit was an accurate retelling of the investigation and there is no evidence that Officer Hartman intentionally misled the issuing judge.

Further, Officer Hartman excluded certain details from the affidavit regarding the reliability of the second CS. *See United States v. Lindsey*, 43 F4th 843, 848 (8th Cir. 2022) (explaining that when determining whether a *Leon* good-faith exception exists, a court may consider "information known to the officer but not presented to the issuing judge" (cleaned up)). The second CS had provided information to another officer in the past that proved to be reliable. Additionally, Officer Hartman had participated in a controlled buy with the second CS.

Second, the undersigned does not find that the issuing judge wholly abandoned his judicial role as a neutral party. "A judge abandons his or her judicial role when he or she does not serve as a neutral and detached actor, but rather as a rubber stamp for the police and an adjunct law enforcement officer." *Ortiz-Cervantes*, 868 F.3d at 703 (cleaned up). "A judge abandons her judicial role by not reading the warrant or failing to recognize the warrant was unsigned or failed to identify the property to be searched." *Id.*; *United States v. Dickerman*, 954 F.3d 1060, 1067 (8th Cir. 2020). Further, a judge violates her obligation to be neutral if she has a "pecuniary interest in issuing the warrant" or she has "actively participated in the police investigation." *Dickerman*, 954 F.3d at 1067–68.

In this case, there is no evidence that the issuing judge abandoned his role as a neutral and detached actor. The warrant identifies the address to be searched and what contraband was to be searched for. (Doc. 40, Exh. 1, Search Warrant at 1.) Both the affidavit and the warrant were signed and there is no evidence that the issuing judge had a conflict of interest inhibiting his neutrality or that he actively participated in the investigation. (Doc. 40, Exh. 1, Affidavit at 7; Search Warrant at 3.) Accordingly, the issuing judge properly performed his judicial role in reviewing and validating the warrant application and issuing the warrant.

Third, the undersigned cannot conclude that the supporting affidavit was "so lacking in indicia of probable cause" that the reliance on the search warrant was "entirely unreasonable." *Ortiz-Cervantes*, 868 F.3d at 703 (cleaned up). As discussed in the previous section, the undersigned agrees that Officer Hartman's affidavit detailed sufficient reasons that evidence of illegal drugs would be found at Defendant's residence to support probable cause. Moreover, the affidavit here was also reviewed and approved by a prosecuting attorney and then reviewed and approved by the issuing judge. *See United States v. Clay*, 646 F.3d 1124, 1127–28 (8th Cir. 2011)

(holding that an officer may reasonably defer to the judgment of the prosecutors and the issuing judge that the affidavit provided probable cause). Officer Hartman had no reason to question the issuing judge's probable cause determination, reviewed also by the prosecuting attorney. As such, the officer's belief that probable cause existed to search the residence cannot be "entirely unreasonable."

Fourth, the warrant was not so facially deficient that no police officer could reasonably presume the warrant to be valid. *See United States v. Saddler*, 19 F.4th 1035, 1040 (8th Cir. 2021) (explaining that a warrant is facially deficient when it "fail[s] to particularize the place to be searched or the things to be seized" (cleaned up)). Here, the warrant properly and unambiguously identifies the place to be searched as 723 North Weaver Avenue, and the property to be searched for as heroin/fentanyl, other paraphernalia, and records. The warrant further includes detailed descriptions of the location and physical attributes of the residence and the contraband to be searched for, i.e., describing the residence as "as a duplex and 723 is the southern half of the structure" with "tan siding and a white front door which faces east" and the contraband as "heroin/fentanyl, a white chalky substance." (Doc. 40, Exh. 1, Search Warrant at 1–2.) As already discussed, Officer Hartman thoroughly described his independent investigation to establish probable cause. Thus, the undersigned concludes that the warrant was not facially deficient.

Therefore, even if the warrant lacked probable cause, Officer Hartman objectively and reasonably relied on the search warrant, and as such the evidence obtained from the search should not be suppressed in accordance with the *Leon* good faith exception.

c. **Request for a Franks hearing**

In his motion, Defendant appears to argue that a *Franks* hearing may be in order. (Doc. 28 at 7.) However, as the Court can best construe, Defendant simply added a paragraph in his brief

stating the elements of a *Franks* violation without adding any arguments. At the hearing, Defendant furthered his attempted argument by stating that there were omissions in the warrant affidavit. (Doc. 41 at 58–59). "A search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). A *Franks* hearing regarding alleged omissions of fact is appropriate upon a showing that: "(1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019) (cleaned up). An omission is made with reckless disregard for the truth "when the material omitted would have been clearly critical to the finding of probable cause." *Id.* To justify a hearing, a defendant must make a "substantial preliminary showing comprised of specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007) (cleaned up). Mere allegations are insufficient to warrant a *Franks* hearing. *United States v. Kattaria*, 553 F.3d 1171, 1177 (8th Cir. 2009).

Specifically, at the suppression hearing, Defendant argued "there was clearing [sic] an omission as it relates to the reliability, why the person is reliable." (Doc. 41 at 58–59). Upon review, the undersigned finds that Defendant has not satisfied his burden under *Franks*, as none of the allegedly omitted information was clearly critical to a finding of probable cause. Further, inclusion of the allegedly omitted information would have no material effect on the finding of probable cause.

Additionally, at the beginning of his Motion Defendant contends, in no more than one sentence, that law enforcement exceeded the scope of the search warrant. (Doc. 2 at 1.) However, Defendant does not further articulate any specific instance of such overreach and does not discuss this argument in his legal analysis. As such, the Court declines to address Defendant's argument.

## IV. Conclusion

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Evidence on the Basis of an Unlawful Search of Defendant Pursuant to the Fourth Amendment and Fourteenth Amendment to the United States Constitution be **DENIED**.

**IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: September 21, 2023