IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 22-03124-01-CR-S-BP |
| | ) | |
| KELVIN ANDRE MCGEE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATIONS, AND DENYING MOTION TO SUPPRESS EVIDENCE ON THE BASIS OF AN UNLAWFUL SEARCH

In July 2022, a search warrant was executed at Defendant Kelvin McGee's residence. Defendant was later indicted for (1) possessing 40 grams or more fentanyl with the intent to distribute and (2) being a felon in possession of a firearm. (Doc. 12.)[1] On February 27, 2023, Defendant filed a Motion to Suppress Evidence on the Basis of an Unlawful Search. (Doc. 28.) He primarily (1) argues the search warrant was issued without probable cause and (2) seeks relief under *Franks v. Delaware*, 438 U.S. 154 (1978). Once the Motion was briefed, the Honorable David P. Rush, United States Magistrate Judge for this District, held a hearing on May 22. (Doc. 41.) He subsequently issued a Report and Recommendations (the "Report"), suggesting the Motion be denied. (Doc. 42.) Defendant objects to the Report. (Doc. 45.)

The Court has conducted a de novo review as required by 28 U.S.C. § 636(b)(1). In particular, it has reviewed the parties' pre-hearing submissions, the hearing transcript and exhibits, and Defendant's objections. Having conducted this review, the Court **OVERRULES** Defendant's objections, **ADOPTS** the Report as its Order, and **DENIES** the Motion to Suppress Evidence on the Basis of an Unlawful Search, concluding (1) the warrant was supported by probable cause, (2)

---

[1] Defendant was initially charged with being a felon in possession of a firearm by Complaint on October 4. (Doc. 1.)

even it was not, the good-faith exception permits use of the evidence seized, and (3) Defendant is not entitled to relief under *Franks*. The following discussion is intended to augment, not supplant, the Report's recommended findings and conclusions.

## I. BACKGROUND

On July 27, 2022, Officer Steven Hartman applied for and obtained a warrant—which permitted Defendant's residence to be searched for, *inter alia*, drugs, monies, and firearms—in the Circuit Court of Greene County, Missouri. (Doc. 31-1, p. 1.) A state judge signed the warrant based on Officer Hartman's probable cause Affidavit, which, as relevant here, recounted the following facts that occurred in Springfield, Missouri.[2]

Within 40 days prior to the Affidavit being signed, a confidential source ("CS1") told Officer Hartman Defendant was involved in selling heroin/fentanyl.[3] Officer Hartman investigated and observed Defendant driving a black Chrysler 300 from one address he frequented—929 North Prospect—to 723 North Weaver Avenue. Officer Hartman confirmed the utilities for the North Weaver address were in Defendant's name.

Within 30 days prior, a second confidential source ("CS2"), who was familiar with heroin/fentanyl due to prior drug use and involvement in the drug culture, told Officer Hartman that Defendant was selling heroin/fentanyl from the Chrysler 300. CS2 also offered to arrange a meeting with Defendant to purchase heroin/fentanyl from him. Officer Hartman agreed.

Prior to the transaction, Officer Hartman provided funds for the purchase and ensured CS2 was not in possession of any contraband. Officer Hartman observed CS2 enter the Chrysler 300,

---

[2] The relevant information appears on pages two through five of the warrant application. (Doc. 31-1, pp. 2-5.) To improve readability, the Court will provide citations only when the warrant application is quoted.

[3] The Affidavit explains the term "heroin/fentanyl" is used because "often times fentanyl distributors refer to their product as heroin, when in fact they are distributing fentanyl or fentanyl analogs." (Doc. 31-1, p. 2.)

2

which was in a business parking lot and was being driven by Defendant, for a short period. CS2, without having contact with any other people, returned with "a small clear bag containing a white powdery substance consistent with heroin/fentanyl." (Doc. 31-1, p. 3.)

Officers subsequently followed the Chrysler 300 to two other parking lots. At the second location, Officer Hartman observed an unidentified male enter the Chrysler 300 for approximately two minutes. Based on his training and experience, Officer Hartman believed a drug transaction had occurred.

Officer Hartman later learned the Chrysler 300 was a rental vehicle and obtained a search warrant allowing him to place a GSP tracking device on it. On July 7, he placed the device. Later that day, Defendant returned the Chrysler 300 and leased a white Chevrolet Malibu. After obtaining a warrant, Officer Hartman also placed a GPS tracking device on that vehicle. The device showed the Malibu was frequently stopped by the North Weaver address. Officer Hartman also observed the Malibu in the address's driveway and saw Defendant freely and repeatedly entering and exiting the residence multiple times.

On July 14, the tracking device showed the Malibu left the North Weaver address, and Officer Hartman followed the vehicle to a gas station. There, he saw an individual who he was familiar with due to past drug investigations enter the Malibu for a short period. Officer Hartman believed a drug transaction had occurred.

On July 15, the tracking device showed the Malibu (1) left the North Weaver address and (2) while driving, made some stops which did not last more than 30 seconds and which Officer Hartman believed to be at stop signs. Officer Hartman followed the Malibu as it drove to a business parking lot, where another individual—one who officers knew had been involved in past drug incidents—entered the vehicle for a short period. Officer Hartman believed a drug transaction

3

had occurred and later stopped the suspected buyer while he was driving with a passenger. Upon questioning, the suspected buyer and the passenger provided differing innocent explanations for the meeting with Defendant. However, an officer observed "a clear plastic bag containing a crystalline substance consistent with methamphetamine . . . ." (Doc. 31-1, pp. 4-5.) This prompted Officer Hartman to search the car, where he found a "clear plastic bag containing approximately .5 grams of a white powdery substance consistent with heroin/fentanyl." (Doc. 31-1, p. 5.)

On July 20, Hartman observed an unidentified female enter the Malibu, which was parked in a gas station parking lot, for a short period. He then saw Defendant driving the Malibu.

On July 21, Defendant returned the Malibu. Six days later, Officer Hartman observed a silver Dodge Charger parked in the driveway of the North Weaver address. Shortly thereafter, Defendant and another male entered the Charger, with Defendant on the driver's side. After the Charger proceeded to a business parking lot and left without the passenger, Defendant drove to a gas station, parked at a pump, and entered the store for a few minutes. Defendant returned, and a female entered the Charger for a short period. Based on his training, experience, and prior observations of Defendant, Officer Hartman believed this was a drug transaction. He then stopped the woman, who admitted she had heroin/fentanyl and produced "a bag containing a white powdery substance that appeared to be approximately three grams of heroin/fentanyl." (Doc. 31-1, p. 5.)

Officer Hartman believed Defendant was storing drugs at the North Weaver address, so he applied for and obtained a search warrant. Law enforcement executed the warrant and seized suspected drugs, a large amount of cash, and a pistol. Defendant, who was present at the North Weaver address, was *Mirandized* and subsequently made statements to law enforcement.[4]

---

[4] The facts related to the execution of the warrant were derived from the parties' pre-hearing submissions. (Doc. 28, p. 3; Doc. 31, p. 7.)

4

## II. DISCUSSION

The Fourth Amendment protects individuals "against unreasonable searches and seizures" and, as relevant here, provides "no warrants shall issue, but upon probable cause, supported by oath or affirmation[.]" Defendant contends the search of his residence[5] violated the Fourth Amendment and raises various arguments regarding Officer Hartman's Affidavit; he asks the Court to suppress the evidence seized during the search, all observations made during the search, and Defendant's subsequent statements.[6]

### A. Probable Cause

Defendant first contends the search warrant was issued without probable cause. "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. DeFoggi*, 839 F.3d 701, 706 (8th Cir. 2016) (quotation omitted). To determine whether this standard is met, courts analyze the totality of the circumstances, utilize common sense, and may make reasonable inferences. *Id.* Further, "probable cause is determined based on the information before the issuing judicial officer[,]" and courts afford "great deference to the issuing judge's determination that the affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (cleaned up).

The Court finds probable cause existed to search Defendant's residence. The Affidavit explained that two confidential sources stated Defendant was selling heroin/fentanyl. Law enforcement also conducted an extensive investigation, which involved a controlled drug transaction between CS2 and Defendant as well as significant surveillance. On five occasions, an

---

[5] Defendant refers to the North Weaver address as his "home" and "residence." (*See, e.g.*, Doc. 28, pp. 5, 9.)

[6] Defendant also states law enforcement exceeded the scope of the warrant during the search. (Doc. 28, p. 1.) He, however, does not develop this argument or point to supporting facts. Moreover, all seized evidence discussed by the parties falls within the scope of the warrant.

5

individual entered Defendant's vehicle for a short period of time. Based on his training and experience, Officer Hartman believed four of those interactions were drug transactions. After two such occasions, Officer Hartman stopped the suspected buyers and seized heroin/fentanyl. Moreover, shortly before three of the alleged drug transactions (including those in which the suspected buyers were stopped), Defendant was observed leaving the North Weaver address. Given all this, Officer Hartman's Affidavit demonstrated a fair probability that contraband or evidence of a crime would be found at Defendant's residence.

Defendant attacks this conclusion on multiple grounds. As an initial and significant matter, the Court notes his arguments improperly analyze pieces of the Affidavit in isolation, failing to consider (1) the totality of the circumstances and (2) that all facts discussed are consistent with and reinforce each other. Defendant also fails to undermine the controlled drug transaction between CS2 and Defendant.[7] In any event, Defendant's arguments are unavailing.

First, Defendant asserts the confidential sources' statements do not contribute to a finding of probable cause because the Affidavit fails to discuss the basis of their knowledge or their reliability and contains no information about them (e.g., whether they were engaged in illegal activity or had a criminal history). When probable cause is based on the statement of an informant, "the core question is whether the information is reliable." *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) (cleaned up). For this inquiry, "[a]n informant's reliability, veracity, and basis of knowledge are relevant considerations—but not independent, essential elements[.]" *United States v. Knutson*, 967 F.3d 754, 758 (8th Cir. 2020) (quotation omitted). Notably, "[w]hen an

---

[7] As explained below, Defendant notes the Affidavit did not provide any information about CS2's background, reliability, or how he or she obtained the knowledge shared with Officer Hartman. But all such information is irrelevant to CS2's controlled drug purchase. Officer Hartman ensured CS2 did not have contraband beforehand and observed that CS2 did not interact with anyone other than Defendant before returning with suspected heroin/fentanyl. In these circumstances, additional information about CS2, even if harmful, would not undermine the validity of the controlled drug transaction.

6

informant['s] . . . tip was independently corroborated, a court may deem [it] sufficiently reliable to support a probable cause determination." *United States v. Caswell*, 436 F.3d 894, 898 (8th Cir. 2006). And, "[i]f information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." *Keys*, 721 F.3d at 518 (quotation omitted); *see also United States v. Buchanan*, 574 F.3d 554, 562 (8th Cir. 2009).

Here, the Affidavit did not provide much information regarding the confidential sources, stating only that CS2 had knowledge of fentanyl/heroin due to prior drug use and involvement in the drug culture. However, law enforcement corroborated confidential sources' statements through extensive investigation, which, as explained throughout this Order, unearthed facts suggesting Defendant was engaging in criminal activity and implicated his residence. Thus, the information provided by the confidential sources contributes to a finding of probable cause.

Second, Defendant argues law enforcement merely believed they had seen drug transactions, without directly witnessing them or seizing evidence. He also notes that, after the suspected drug transaction on July 15, Officer Hartman stopped the suspected buyer and his passenger, but they stated they had not bought drugs from Defendant. However, "[w]hether probable cause exists to issue a search warrant is a commonsense, practical question . . . . It does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Miller*, 11 F.4th 944, 953 (8th Cir. 2021) (quotations omitted); *see also United States v. Mathes*, 58 F.4th 990, 994 (8th Cir. 2023) ("Probable cause is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." (quotation omitted)). Here, officers

saw multiple individuals enter Defendant's vehicle for a short period, which can be consistent with drug transactions. Moreover, on two occasions, the suspected buyers were stopped, and heroin/fentanyl was seized. This was sufficient to infer Defendant had sold drugs; ironclad, direct evidence was not required.

With respect to the events of July 15, the innocent explanations provided by the suspected buyer and his passenger—which were inconsistent—are merely one fact for the Court to consider. Significantly, Officer Hartman also searched their car and seized a small bag of what appeared to be heroin/fentanyl, which was consistent with what (1) Defendant was suspected of selling and (2) was obtained in the controlled drug transaction. Thus, there was reasons to believe the innocent explanations were false and drugs had been purchased from Defendant. Additionally, Defendant fails to discuss the suspected transaction that occurred on July 21. There, the suspected buyer was stopped and, while she did not state she bought drugs from Defendant, she had drugs similar to those Defendant was alleged to sell. This further bolsters the conclusion that a drug transaction occurred on July 15.

Finally, Defendant contends nothing in the Affidavit established criminal activity occurred at the North Weaver address (e.g., drugs were not seen there, and officers did not observe drug transactions there). In support, Defendant cites case law providing that, "without a nexus between a defendant's drug-dealing and the defendant's residence, evidence of the former does not provide probable cause for a warrant to search the latter." *United States v. Norey*, 31 F.4th 631, 637 (8th Cir. 2022). He further notes that, on one occasion, an individual met Defendant at the North Weaver address and rode in his vehicle for a short period before a suspected drug transaction occurred, questioning whether this individual supplied the drugs or was otherwise involved in drug activity.

8

Case 6:22-cr-03124-BP   Document 46   Filed 12/05/23   Page 8 of 11

The Court agrees a nexus between a residence and criminal activity is required. However, the Eighth Circuit has held that "issuing magistrates need not base their findings of probable cause on facts alleging direct observation of criminal activity but may base their findings on normal inferences drawn from the surrounding circumstances and allegations of fact as well as the type of crime." *United States v. Bulgatz*, 693 F.2d 728, 731 (8th Cir. 1982). That case went on to explain:

> [T]he fact that [the defendant] started from her residence shortly before allegedly delivering drugs to [another individual] on November 3, suggests that drugs were kept at [the defendant's] house. Nothing in the affidavit would suggest that the drugs originated elsewhere, and given the common assumption that drug suppliers do not ordinarily carry large quantities of expensive drugs on their person, one would assume that the drugs were kept in the safety of her home.

*Id.* (footnotes omitted).

Here, the Affidavit explains Defendant left his residence shortly before, and did not stop at other locations prior to, conducting the alleged drug transactions. This was sufficient to infer that the drugs originated at Defendant's residence. As Defendant points out, he once interacted with a third party after leaving his residence and before a suspected drug transaction. But, on two other occasions, Officer Hartman was notified by a tracking device that Defendant's vehicle left the North Weaver address. Officer Hartman then found the vehicle while it was still being driven. Once, he specifically noted that, before he caught up, the vehicle had not stopped anywhere for more than 30 seconds, stating those stops appeared to be at stop signs. For these two occasions, the Affidavit does not mention a third party. In these circumstances, there was a fair probability that contraband or evidence of a crime would be found at Defendant's residence despite the involvement of a third party on one occasion.

### B. Good-Faith Exception

Even assuming the warrant was not supported by probable cause, the Court finds the evidence seized from Defendant's residence need not be suppressed. Exclusion of evidence is not

9

Case 6:22-cr-03124-BP   Document 46   Filed 12/05/23   Page 9 of 11

necessary "'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even if the warrant is subsequently invalidated." *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013) (quoting *United States v. Leon*, 468 U.S. 897, 920-21 (1984)). However, certain circumstances—including "when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*"—preclude a finding of good faith. *Id.* (emphasis in original) (quotation omitted).

Defendant argues this occurred here, asserting Officer Hartman's Affidavit was "bare bones." Defendant, however, merely reiterates some of his prior arguments. (Doc. 45, pp. 7-9.) For the reasons explained above, the Court disagrees and finds the good-faith exception applies.

C. *Franks*

Defendant briefly references *Franks v. Delaware*, 438 U.S. 154 (1978). (Doc. 28, p. 7.) Pursuant to *Franks*, "[a] search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001). Defendant initially failed to develop his argument. (Doc. 28, p. 7.) But, at the hearing, he asserted some observations were omitted from the Affidavit, (Doc. 41, p. 3), and argued Officer Hartman did not (1) state the individuals involved in the July 15 stop denied purchasing drugs from Defendant, (2) include specific information about the reliability of the confidential sources, or (3) provide more extensive information regarding Defendant's convictions, listing only his arrests, (Doc. 41, pp. 57-64.)

To obtain a hearing under *Franks*, "a defendant must make a substantial preliminary showing that there was an intentional or reckless . . . omission which was necessary to the finding

10

of probable cause, a requirement which is not easily met." *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008) (quotation omitted). And, to invalidate a warrant based on an omission, a defendant must show "(1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019) (quotation omitted).

The Court finds Defendant has not met either standard. With respect to his first argument, Officer Hartman clearly recounted the innocent explanations provided by the individuals stopped on July 15, (Doc. 31-1, p. 4), so there was no omission. With respect to the second and third arguments, any additional information would not undermine a finding of probable cause. Even assuming the confidential sources were not reliable, and Defendant's arrests were more severe than his convictions, the police, as detailed above, conducted an extensive investigation that established probable cause to search Defendant's residence.

### III. CONCLUSION

For these reasons, the Court **OVERRULES** Defendant's objections, (Doc. 45); **ADOPTS** the Report, (Doc. 42), in its entirety as augmented by the above discussion; and **DENIES** Defendant's Motion to Suppress Evidence on the Basis of an Unlawful Search, (Doc. 28.)
**IT IS SO ORDERED.**

DATE: <u>December 5, 2023</u>

       <u>/s/ Beth Phillips</u>
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT